IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

TAMMY RIVERO,

    Individually, and On Behalf Of All
    Others Similarly Situated,

    Plaintiffs,

v.

LUNG INSTITUTE, LLC

    Defendant.
_____/

Case Number: 16-CA-7765
Division: F

CLASS ACTION COMPLAINT

## AMENDED COMPLAINT

Plaintiffs, TAMMY RIVERO individually and on behalf of all others similarly situated (hereinafter "Plaintiffs" and "Putative Class Members"), by and through the undersigned attorney, bring this action on behalf of themselves and other former and present patients of Defendant LUNG INSTITUTE, LLC ("Lung Institute"), pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), and other violations of Florida state law to recover damages, attorney's fees, and costs, and states as follows:

### I.
### PARTIES

1.    At all times pertinent to this action, Plaintiff TAMMY RIVERO, an individual, was and is a resident of Burke County, North Carolina.

2.    At all times pertinent to this action, Defendant, LUNG INSTITUTE, LLC was and is a company incorporated in the State of Delaware and authorized to conduct business in Florida. Defendant's principal place of business is in Hillsborough County and is located at 201 E. Kennedy Blvd., Ste. 425, Tampa, Florida 33602.

3. Defendant's registered agent for service of process is James St. Louis, 201 E. Kennedy Blvd., Ste. 425, Tampa, Florida, 33602.

4. At all times relevant to this action Defendant engaged in acts or practices in the conduct of "trade or commerce" as defined in Fla. Stat. § 501.203(8).

## II.
## JURISDICTION & VENUE

5. This is an action for damages in excess of Fifteen Thousand Dollars ($15,000.00) excluding interest, attorney's fees and costs.

6. Plaintiff Tammy Rivero is a resident of Burke County, North Carolina.

7. Defendant's breaches of duty and tortious activity occurred within Hillsborough County, Florida; thus, this cause of action arises within the jurisdiction of this court.

8. Defendant is operating, present, and/or doing business within this jurisdiction.

## III.
## GENERAL ALLEGATIONS

9. Defendant is a company that operates medical offices in the State of Florida, as well as throughout the United States.

10. Defendant provides "stem cell" procedures that purport to treat a litany of serious diseases, including COPD, Interstitial Lung Disease, Hypersensitivity Pneumonitis, Sarcoidosis, Osteoarthritis, Rheumatoid Arthritis, Lupus, and even Crohn's Disease.

11. Defendant, through its advertising, promotes procedures that promise to "heal degenerating organs".

12. The Defendant is essentially a marketing company masquerading as a medical "institute". The Defendant intentionally circumvents FDA regulation by injecting patients' own "stem cells" back into their bodies. In the case of the "venous" procedure, the Defendant is not even

injecting stem cells back into the patients' bloodstream.[1] As for the "adipose" procedure, which Defendant no longer administers, at least one clinic in Florida unrelated to Defendant has been shut down for administering it. In the case of the most expensive of these three, the "bone marrow" procedure, only "anecdotal" evidence in any way supports the efficacy of the procedure. Not a single double blind, placebo-controlled study and not a single piece of medical literature supports the efficacy of any of Defendant's "stem cell" procedures.

13. From 2013 to the present the Defendant urged prospective patients through their convoluted, deceptive marketing and advertising, and through other events hosted throughout the United States, to become patients of the Lung Institute and to pay for and undergo procedures.

14. Defendants have caused marketing materials and advertisements of the Lung Institute's services to be disseminated to consumers in Florida, and throughout the United States.

15. The cost of the procedures ranged from $5,000 to $12,000. For subsequent "supportive" therapies such as "Growth Factor" and "Stemtrition", the Plaintiffs often incur monthly costs of $500 and up. The Lung Institute even has and had the audacity to offer "Veteran Discounts" in order to defraud the men and women who have served our country.

16. Each patient was and is responsible for paying the full cost of the procedure, as the Lung Institute did not accept health insurance, Medicare, or Medicaid.

17. The Defendant urged and assisted prospective patients who could not afford the cost of the procedure to raise the funds through bake sales, Kickstarter campaigns, cash-out home refinancing and other fund-raising activities.

18. Since 2013 to present, the Lung Institute has generated millions of dollars from persons in Florida who have become patients and undergone its advertised procedures. The Lung Institute is currently making at least $2,000,000 per month.

---

[1] There are no stem cells in the blood. Defendant's employees and/or agents simply withdraw the patients' blood, spin it in a centrifuge, inject it back into the patients' body, and according to the Defendant that somehow cures the serious diseases detailed in paragraph 10.

19. By and through their marketing materials and expressions made by representatives of the Lung Institute, the Defendant has expressly or by implication misrepresented the following:

    a) That its "Stem Cell" and "supportive" therapies such as "Growth Factor" and "Stemtrition" are effective treatment for COPD, Emphysema, Chronic Bronchitis, Interstitial Lung Disease, Pulmonary Fibrosis, Bronchiectasis, and Pneumoconiosis.

    b) That its patients will be able to get "off oxygen", and will see improvement from these alleged therapies.

20. On or about April 2014 Plaintiff, Mrs. Tammy Rivero, presented to the Lung Institute's Tampa office location.

21. On or about April 2014 she complained of breathing problems and has a previous diagnosis of lung disease.

22. On or about April 2014 Plaintiff was evaluated by staff members of the Lung Institute, who concluded that she was a candidate for stem cell "therapy".

23. Plaintiff paid $7,500 to the Lung Institute to undergo the procedure. Mrs. Rivero was encouraged to, and did take out a home equity loan to pay for the procedure.

24. On or about April 2014 Plaintiff gave her authorization and consent to allow the Lung Institute in Tampa to perform the procedure.

25. She was told that she would be off her supplemental oxygen therapy within "a few weeks". Subsequent to the procedure, Plaintiff did not and has not noticed any improvement in her symptoms.

26. To add insult to injury, Plaintiff was informed that in order to "keep her stem cells working" that she needed to pay an additional $70 per month for shots to "reboost" them. She could not afford these useless treatments because Defendant told her she would only need to pay $7,500, so

that is the home equity loan amount she withdrew. Because Mrs. Rivero could not afford the additional charges the Defendant essentially blamed her for the ineffectiveness of its procedure.

27. Plaintiff's condition has now worsened to the point that she cannot work.

## COUNT I:
## DECEPTIVE AND UNFAIR TRADE PRACTICES

28. Plaintiffs re-allege the allegations set forth in paragraphs one (1) through twenty-seven (27) above, as if set forth herein.

29. Florida's Deceptive and Unfair Trade Practices Act, Chapter 501 of the Florida Statutes, is to be liberally construed to protect the consuming public from those who engage in unfair methods of competition, as well as unconscionable, deceptive or unfair acts or practices in the conduct of any trade or commerce.

30. Plaintiffs are consumers within the meaning of Fla. Stat. § 501.203(7).

31. Defendant engages in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

32. While FDUTPA does not define "deceptive" and "unfair", it incorporates by reference the Federal Trade Commission's ("FTC") interpretations of these terms. Under the federal statute, an unfair or deceptive practice is that which "'offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Samuels v. King Motor Co. of Ft. Lauderdale*, 782 So. 2d 489, 499 (Fla. 4th DCA 2001) (citing *Spiegel, Inc. v. Fed. Trade Comm'n*, 540 F.2d 287, 293 (7th Cir. 1976).

33. Defendant Lung Institute represented to Plaintiffs that their procedures were effective treatment for lung diseases. They had knowledge that no evidence other than "anecdotal" evidence supported such efficacy. They failed to inform Plaintiffs that no credible evidence existed to support the effectiveness of the procedures they aggressively marketed.

34. Defendant sold, marketed, and administered stem cell therapy procedures that had no basis in medicine and had no possibility of effectively treating Plaintiffs' lung diseases.

35. Defendant has willfully engaged in the acts and practices alleged herein when Defendant knew or should have known that said acts and practices were unfair, deceptive, or prohibited by rule.

36. Through the Defendant's advertising misrepresentations related to said procedures as alleged herein, Defendant has committed acts and practices in trade or commerce which shock the conscience, offend public policy, and are immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers; acts and practices which are material and are likely to mislead consumers acting reasonably under the circumstances.

37. As a direct and proximate result of Defendant's deceptive trade practices, Plaintiffs were deceived into believing that the Lung Institute's procedures were medically sound and effective, causing significant economic damage to Plaintiffs.

38. Pursuant to Fla. Stat. §§ 501.211(2) and 501.2105, Plaintiffs are entitled to recover from Defendant the reasonable amount of attorney's fees Plaintiffs have incurred in representing their interests in this matter.

WHEREFORE, Plaintiffs demand that this Court enter judgment against Defendant LUNG INSTITUTE, LLC, in an amount equal to the actual damages of Plaintiff and Putative Class Members injured by reason of the violations alleged above, award Plaintiffs reasonable attorney's fees and costs, and any other relief this Court deems proper.

### COUNT II:
### FRAUDULENT INDUCEMENT

39. Plaintiffs re-allege the allegations set forth in paragraphs one (1) through twenty-seven (27) above, as if set forth herein.

40. Defendant, by acts of both omission and commission, made false statements concerning material facts about the capabilities, stability, products, medical capability, and services of Defendant, which induced Plaintiffs to pay for and undergo stem cell therapy procedures with the Defendant.

41. Defendant knew at the time Plaintiffs underwent the stem cell procedures that the statements and omissions about the capability of the procedures were false.

42. Defendant intended that Plaintiffs be induced by its false statements so that Plaintiffs would deposit funds with the Lung Institute and undergo the procedure.

43. In the course of depositing funds for and entrusting Defendant to perform the stem cell therapy procedures, Plaintiffs reasonably and justifiably relied on statements of fact made to them by Defendant.

44. As a direct and proximate result of Plaintiffs' reliance on the statements and omissions made to them by Defendant, Plaintiffs have suffered damages.

WHEREFORE, Plaintiffs demand that this Court enter judgment against Defendant LUNG INSTITUTE, LLC, in an amount equal to the actual damages of Plaintiff and Putative Class Members injured by reason of the violations alleged above, award Plaintiffs reasonable attorney's fees and costs, and any other relief this Court deems proper.

## COUNT III:
## MISREPRESENTATION

45. Plaintiffs re-allege the allegations set forth in paragraphs one (1) through twenty-seven (27) above, as if set forth herein.

46. Defendant fraudulently and/or negligently misrepresented that its "stem cell" "treatment" and supposedly supportive therapies such as "Growth Factor" and "Stemtrition" were effective therapies for lung disease, and/or negligently supplied false information regarding the success of such procedures, which caused Plaintiffs' harm.

47. Defendant knew that the statements were false when they made them. The Defendants knew that their procedures were unsupported by any medical literature and/or clinical studies. The Defendants were and are making too much money to care.

48. Defendant intended that Plaintiffs would rely on such false statements.

49. Plaintiffs did rely on Defendant's false statements.

50. Plaintiffs assuredly would not have paid for and undergone the Defendant's stem cell therapy procedures but for the Defendant's false statements.

51. As a direct and proximate result of Defendant's misrepresentation of a material fact, Plaintiffs have suffered damages.

WHEREFORE, Plaintiffs demand that this Court enter judgment against Defendant LUNG INSTITUTE, LLC, in an amount equal to the actual damages of Plaintiff and Putative Class Members injured by reason of the violations alleged above, award Plaintiffs reasonable attorney's fees and costs, and any other relief this Court deems proper.

## COUNT IV.
## CIVIL REMEDIES FOR CRIMINAL PRACTICES, FLORIDA STATUTE 772.104(1)

52. Plaintiffs re-allege the allegations set forth in paragraphs one (1) through twenty-seven (27) above, as if set forth herein.

53. Lung Institute, LLC and its employees and/or agents conspired, endeavored, and with criminal intent received proceeds received directly from the pattern of criminal activity described in paragraphs 1-27.

54. As described therein, the Lung Institute's very existence is predicated upon fraud. In the case of the venous procedure, the Lung Institute knows it is not injecting stem cells into the patients. And in the venous *and* bone marrow procedures, the Defendant knows that the procedures

8

do not work past the placebo effect, a.k.a. the "anecdotal" evidence the Defendant touts.[2] It bears repeating that there is no medical literature and no human studies that support Defendant's procedures.[3] Defendant continues to hyper-aggressively market these techniques for pecuniary gain alone.

55. Lung Institute, LLC committed the acts alleged herein in the establishment and operation of its enterprise. It enriched and continues to enrich itself with the cash contributions of elderly, suffering victims to the tune of millions monthly. The entity was established to provide the procedures and follow-up "treatment" described in paragraphs 1-27, and they constitute Defendant's entire operation.

56. Defendant's existence itself is an open-ended, ongoing pattern of criminal activity. Further, Defendant's regular way of doing business is to defraud Plaintiffs.

57. These acts committed by defendant have a clear relationship to one another, as they are all based on the same fraudulent portrayal of their procedures' efficacy.

WHEREFORE, Plaintiffs demand that this Court enter judgment against Defendant LUNG INSTITUTE, LLC, in an amount equal to treble the actual damages of Plaintiff and Putative Class Members injured by reason of the violations alleged above, award Plaintiffs reasonable attorney's fees and costs, and any other relief this Court deems proper.

## COUNT V.
## CONVERSION

58. Plaintiffs re-allege the allegations set forth in paragraphs one (1) through twenty-seven (27) above, as if set forth herein.

---

[2] These two procedures are the only ones the Lung Institute currently offers, as it discontinued its "adipose" procedure when an unaffiliated Florida clinic that offered it was subjected to a government shutdown.

[3] The only published study Defendant even holds out in support of its procedure was performed on rodents, and there is no evidence the stem cell trapped in the lung of the rodent regenerated any tissue. The doctor who performed the study has since expressly disclaimed any use of his study to support stem cell "therapies" such as those the Defendant offers.

9

59. Plaintiffs paid cash for their procedures. Unsurprisingly, neither Medicare nor insurance offer to reimburse any of Defendant's procedures, so Plaintiff and all putative class members paid specific cash monies capable of identification in the thousands.

60. Defendant asserted control over these monies by wrongful act inconsistent with Plaintiffs' ownership of them. Defendant is currently in possession of the monies of Plaintiffs.

WHEREFORE, Plaintiffs demand that this Court enter judgment against Defendant LUNG INSTITUTE, LLC, in an amount equal to the actual damages of Plaintiff and Putative Class Members injured by reason of the violations alleged above, award Plaintiffs reasonable attorney's fees and costs, and any other relief this Court deems proper.

## COUNT VI.
## COMMUNICATIONS FRAUD ACT, FLORIDA STATUTE 817.034

61. Plaintiffs re-allege the allegations set forth in paragraphs one (1) through twenty-seven (27) above, as if set forth herein.

62. Defendant engaged and continues to engage in a scheme to defraud Plaintiffs.

63. It has done so by aggressively marketing and/or to Plaintiffs advertising through the Internet, social media, seminars, and sales phone calls with an intent to defraud and collect monies from Plaintiffs.

64. Defendant has and continues to make representations that its placebo-effect procedures can get a majority of Plaintiffs who are on supplemental oxygen "off oxygen", and that they are effective treatment for COPD, interstitial lung disease, and other serious lung diseases.

65. Defendant obtained monies in the thousands from the Plaintiffs through its fraudulent communications.

WHEREFORE, Plaintiffs demand that this Court enter judgment against Defendant LUNG INSTITUTE, LLC, in an amount equal to the actual damages of Plaintiff and Putative Class

Members injured by reason of the violations alleged above, award Plaintiffs reasonable attorney's fees and costs, and any other relief this Court deems proper.

## COUNT VII.
## MISLEADING ADVERTISING, FLORIDA STATUTES 817.06, 817.41

66. Plaintiffs re-allege the allegations set forth in paragraphs one (1) through twenty-seven (27) above, as if set forth herein.

67. Defendant has and continues to make misleading statements to Plaintiffs.

68. It has done so by aggressively marketing and/or advertising to Plaintiffs through the Internet, social media, seminars, and sales phone calls.

69. Defendant has and continues to make such misleading statements that its placebo-effect procedures can get a majority of Plaintiffs who are on supplemental oxygen "off oxygen", and that they are effective treatment for COPD, interstitial lung disease, and other serious lung diseases.

70. Defendant knowingly and intentionally published and disseminated advertisements containing untrue, deceptive, and misleading statements concerning the efficacy of its procedures.

WHEREFORE, Plaintiffs demand that this Court enter judgment against Defendant LUNG INSTITUTE, LLC, in an amount equal to the actual damages of Plaintiff and Putative Class Members injured by reason of the violations alleged above, award Plaintiffs reasonable attorney's fees and costs, and any other relief this Court deems proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury of all issues so triable.

DATED this 25th day of August, 2016.

RESPECTFULLY SUBMITTED:

\_\_\_\_/s/ Ben Vinson_____
BEN A. VINSON, JR.
Florida Bar No. 95227
ben@vinsonlawoffice.com

>VINSON LAW LLC
>505 E. Jackson Street, Ste. 207
>Tampa, FL 33602
>Phone: (813) 839-5708
>Fax:    (813) 831-5043
>**Attorney for Plaintiffs**

12