UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TAMMY RIVERO, et al.,

     Plaintiffs,

v.                                CASE NO. 8:17-cv-3113-T-23MAP

LUNG INSTITUTE, LLC,

     Defendant.

_____/

**<u>ORDER</u>**

Regenerative Medicine Solutions operates Lung Institute clinics across

several states.  Tammy Rivero and Howard Bennett each paid the Tampa Lung

Institute for stem cell treatment but without — or so the plaintiffs allege — a

satisfactory result.  On August 17, 2016, Rivero sued (Doc. 5-1 at 58) Lung Institute

in state court under Florida statutory and common law and alleged the deceptive

marketing of an ineffectual medical treatment.  Rivero amended (Docs. 5-1 at 16 and

5-5 at 50) the complaint twice.  Neither the complaint nor the first and second

amended complaints mentions RMS (apparently, the corporate parent of Lung

Institute).  On December 15, 2017, Rivero again amended (Doc. 2 at 1) the

complaint to add Bennett as a plaintiff and to allege claims against, and to request

relief from, RMS.  (Doc. 1 at 1–2)  But, oddly and unaccountably, the third amended

complaint fails to name RMS as a defendant (and the plaintiff failed to serve RMS),

and the third amended complaint persists in naming Lung Institute as the sole defendant.

Two weeks later, RMS purported to remove (Doc. 1) the action and cited in the notice of removal both the general removal statute and the Class Action Fairness Act. Characterizing itself under the novelty "de facto defendant," RMS asserts that "[b]ecause Plaintiffs seek 'judgment' and 'damages' against 'de facto defendant' RMS in the Third Amended Complaint, RMS is a party defendant that is entitled to exercise its procedural due process rights under 28 U.S.C. §§ 1332, 1441, & 1446, as amended by [the Class Action Fairness Act]." (Doc. 1 at 3) The plaintiffs move (Doc. 18) under 28 U.S.C. § 1332(d)(3) for a discretionary remand, which is opposed (Doc. 23) by the "defacto defendant" RMS. None of the complaints, including the third amended complaint, includes allegations suggestive of an attempt by the plaintiffs — under any of several possible legal theories — to disregard the corporateness of Lung Institute.

A May 9, 2018 order (Doc. 28) states that "confusion about RMS's role, if any, in this litigation impedes the resolution of the motion [to remand]" and directs the plaintiffs to amend the complaint either to name RMS as a defendant or to omit the claims against RMS. The plaintiffs amended (Doc. 30) the complaint and omitted the claims against RMS.

To recapitulate: a corporate person (RMS) who is not a party to this action filed a notice of removal, which under present rules immediately removed the action to the district court. The named defendant in the action has never itself either

removed or formally joined in, or even consented to, the non-party's purported removal.

**I.  RMS, a non-party, cannot remove the action**.

Only "the defendant or the defendants"can remove an action under 28 U.S.C. § 1446.  *Mitskovski v. Buffalo & Fort Erie Pub. Bridge Auth.*, 435 F.3d 127, 132 n.4 (2d Cir. 2006).  Under 28 U.S.C. §§ 1453(b), "A class action may be removed to a district court of the United States in accordance with section 1446[] . . . such action may be removed by any defendant without the consent of all defendants." A district court lacks subject-matter jurisdiction if a non-party removes an action. *Housing Authority of City of Atlanta, Ga. v. Millwood*, 472 F.2d 268, 272 (5th Cir. 1973). "A non-party, even one that claims to be a real party in interest, lacks the authority to institute removal proceedings."  *De Jongh v. State Farm Lloyds*, 555 Fed. Appx. 435, 437 (5th Cir. 2014) (per curiam).

The complaint and the four amended complaints name Lung Institute as the sole defendant.  Because the plaintiffs never named RMS as a defendant to the state court action, RMS improperly removed the action.

**II.  Lung Institute fails in the attempt to retroactively receive the benefit of RMS's putative but failed removal attempt.**

"Under the general removal procedure statute [28 U.S.C. § 1446(b)(1)], a notice of removal must ordinarily be filed within 30 days after receipt of the initial pleading or service of summons.  If the case stated by the initial pleading is not

removable, the notice of removal may be filed within 30 days after receipt of an amended pleading or other paper from which it may first be ascertained that the case is or has become removable . . . . This 30-day requirement applies to removal of class actions under CAFA." *Moore's Federal Practice*, Vol. 16, § 107.91[4][a] (3d ed. 2016).  On August 18, 2016, Rivero served (Doc. 34-1 at 1) Lung Institute with the original complaint (Doc. 5-1 at 58), which alleges facts sufficient to establish the action's removability under CAFA.  No later than September 19, 2016, Lung Institute could have removed the action, but Lung Institute elected not to remove the action.

But on June 19, 2018, twenty-one months after the deadline for Lung Institute to remove the action, almost six months after RMS removed the action, almost five months after the plaintiffs moved to remand, and just over four months after RMS responded to the motion to remand, Lung Institute submitted (Doc. 32) a notice, which states that "the Lung Institute joins and adopts RMS's opposition to plaintiffs' motion to remand.  The arguments apply equally to the Lung Institute." (Doc. 32 at 1)  This paper is not a removal or a joinder in removal or even a consent to removal but is an adoption of arguments against remand.

The plaintiffs respond that RMS's arguments "do not apply equally to the Lung Institute" because the latter failed to remove the action within the necessary thirty-day limit (Doc. 34 at 1–2).  The plaintiffs state correctly that the defendant's support for removal:

> is based on removal by a non-party, non-intervenor, non-participant of this action. RMS's removal was initially improper. However, Lung Institute continues to rely on the motion of a non-party, non-intervenor, non-participant. By way of adopting and joining RMS's opposition to Plaintiff's motion to remand, Lung Institute is effectively seeking to insert itself as the removing party. However, since Lung Institute's 30-day window in which to remove has long since expired, it cannot now assert that it is substituting itself for RMS[.] . . .

(Doc. 34 at 2)  Simply stated, Lung Institute is time-barred from removal.

## III.   CAFA's discretionary exception.

Under 28 U.S.C. § 1332(d)(3), CAFA's discretionary exception, "A district court may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction under [CAFA] over a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed . . . ."  Between one-third and two-thirds of putative class members are citizens of Florida, and the sole defendant is a citizen of Florida. (Doc. 23 at 6)

Under 28 U.S.C. § 1332(d)(3)(A)–(F), six factors are considered in deciding whether to decline jurisdiction.  No single factor is dispositive.  *Speed v. JMA Energy Co.*, LLC, 872 F.3d 1122, 1128 (10th Cir. 2017).

### 1: "whether the claims asserted involve matters of national or interstate interest."

RMS owns five Lung Institutes nationwide, but the plaintiffs sue only the Tampa facility.  The plaintiffs argue that Florida has a strong interest in regulating

business within its borders.  RMS asserts that the defendant advertises nationwide

and that patients travel long distances for treatment.  Also, RMS argues (1) that

Counts II and IV allege a widespread national conspiracy between the Lung

Institutes and various individuals that implicates all Lung Institutes and patients

nationwide and (2) that the outcome of the litigation potentially impacts the actions

of every Lung Institute.

### 2: "whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States."

The plaintiffs assert all their claims under Florida law.  RMS argues that

foreign law might govern the plaintiffs' common law claims for breach of fiduciary

duty and for conspiracy and that these claims have not yet undergone a choice of law

analysis.  (Doc. 23 at 9–10)  The civil RICO and civil conspiracy claims allege that

out-of-state Lung Institutes and out-of-state individuals conspired with the Tampa

Lung Institute, but RMS argues that the plaintiffs offer no analysis of why the out-of-

state co-conspirators are subject to Florida law.  (Doc. 23 at 10)

### 3: "whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction."

The plaintiffs assert that "the third amended complaint was crafted in a way to

notify Defendant of its de facto status without subjecting Plaintiffs' claims[] . . . to

federal jurisdiction."  (Doc. 18 at 5)  Citing *Phillips v. Kaiser Found. Health Plan, Inc.*,

953 F. Supp. 2d 1078, 1086 (N.D. Cal. 2011) ("Congress did not intend for plaintiffs

to defeat federal jurisdiction by filing essentially national or regional class actions

limited to plaintiffs from one state."), RMS argues (1) that the plaintiffs admit to having "crafted" the third amended complaint to avoid federal jurisdiction and (2) that, "[b]ecause Plaintiffs have artificially restricted a natural proposed class, this weighs in favor of retaining federal jurisdiction." (Doc. 23 at 11)  RMS suggests (1) that a "natural proposed class would be the patients of all five Lung Institutes" because "the treatments and practices about which Plaintiffs complain are shared by all five Lung Institutes" and (2) that "[b]y restricting the class to only patients of one of the Lung Institutes, and by omitting federal claims that are commonly filed in false advertising cases (such as a Lanham Act claim), Plaintiffs have done what Congress sought to avoid — gerrymander a single state class." (Doc. 23 at 11)

> **4: "whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants."**

The plaintiffs argue that the action is brought in a forum with a "distinct nexus" to the class members, to the alleged harm, and to the defendants.  The alleged targeted deceptive marketing, the alleged sales calls, and the alleged requests for money originated from Tampa.  (Doc. 18 at 6)  All putative class members attended the Tampa Lung Institute facility for treatment, and the class encompasses only those patients who received treatment at the Tampa Lung Institute.  (Doc. 18 at 6)

RMS asserts that other states have a significant interest in this litigation. 5.50% of Tampa Lung Institute's patients are citizens of Texas and 5.04% of Tampa Lung Institute's patients are citizens of Georgia.  (Doc. 23 at 13)  Citing a report from

the United States Senate Committee on the Judiciary,[*] RMS asserts that because a

state other than Florida contains over 5% of putative class members, the putative

class members are "widely dispersed" — thus both Texas and Georgia have a "strong

interest" in the action, which favors the district court's adjudicating this action.

(Doc. 23 at 12–13)  But a report of the Committee lacks binding authority on a

federal court.  Finally, RMS argues that because almost half of the putative class

members come from a variety of states outside Florida, Florida's interests do not

predominate.

> **5: "whether the number of citizens of the State in which the action
> was originally filed in all proposed plaintiff classes in the aggregate is
> substantially larger than the number of citizens from any other State, and
> the citizenship of the other members of the proposed class is dispersed
> among a substantial number of States."**

"As a representative sample, of the thirty-three Plaintiffs who have retained the

[plaintiffs' lawyer], other than the nineteen Florida citizens: three are citizens of MI,

two PA, two CA, and one of each from WI, NH, NJ, VA, GA, AZ, and NC." (Doc.

18 at 6).

> **6: "whether, during the 3-year period preceding the filing of that class
> action, 1 or more other class actions asserting the same or similar
> claims on behalf of the same or other persons have been filed."**

During the three-years before the plaintiffs sued, no class actions were filed

against the Tampa Lung Institute or any of her sister entities.  (Doc. 18 at 7)

---

[*] RMS repeatedly quotes a report from the United States Senate Committee on the Judiciary.

**Summary of the discretionary exception factors.**

Accounting for the interests of justice and the totality of the circumstances, a balancing of the discretionary exception factors favors the state court's adjudicating and resolving this action. All claims are brought under Florida law; over 50% of the putative class members are citizens of Florida; the number of Florida citizens in the putative class is substantially larger than the number of citizens from any other state; the class members from outside Florida are dispersed very thinly across ten states, but the majority is concentrated in Florida; and all putative class members received treatment at Tampa's Lung Institute.

## CONCLUSION

The plaintiffs' motion (Doc. 18) to remand is **GRANTED**. Under both 28 U.S.C. § 1332(d)(3) and 28 U.S.C. § 1447(c), this action is **REMANDED**. The clerk is directed (1) to mail a certified copy of this order to the clerk of the Circuit Court for Hillsborough County, (2) to terminate any pending motion, and (3) to close the case.

ORDERED in Tampa, Florida, on July 23, 2018.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE